IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 127,055

In the Matter of JUNE R. CROW-JOHNSON,
*Respondent.*

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Oral argument held June 12, 2024. Opinion filed August 2, 2024. Disbarment.

*Matthew J. Vogelsberg,* Chief Deputy Disciplinary Administrator, argued the cause, and *Amanda G. Voth*, Deputy Disciplinary Administrator, was on the formal complaint for the petitioner.

Respondent did not appear for oral argument.

PER CURIAM: This is an attorney discipline proceeding against June R. Crow-Johnson, who was admitted to practice law in Kansas in September 1990 and whose last address as reported to attorney admissions was in Topeka.

The Office of the Disciplinary Administrator filed a formal complaint against Crow-Johnson alleging violation of the Kansas Rules of Professional Conduct (KRPC) and Supreme Court Rules. Crow-Johnson did not answer and failed to appear before the Kansas Board for Discipline of Attorneys or this court. Nevertheless, a hearing panel of the Board conducted an evidentiary hearing after which it issued a final hearing report setting forth its factual findings, legal conclusions, and recommended discipline.

The hearing panel determined that Crow-Johnson violated:

- KRPC 1.3 (2024 Kan. S. Ct. R. at 328) (diligence),

- KRPC 1.4(a) (2024 Kan. S. Ct. R. at 329) (communication),

- KRPC 1.15(a) (2024 Kan. S. Ct. R. at 369) (safekeeping property),

- KRPC 1.16 (2024 Kan. S. Ct. R. at 374) (declining or terminating representation),

- KRPC 3.3 (2024 Kan. S. Ct. R. at 387) (candor),

- KRPC 3.4(c) (2024 Kan. S. Ct. R. at 391) (disobeying an obligation of the tribunal),

- KRPC 8.1(b) (2024 Kan. S. Ct. R. at 427) (disciplinary matters),

- KRPC 8.4(d) (2024 Kan. S. Ct. R. at 430) (misconduct prejudicial to the administration of justice),

- Supreme Court Rule 206(o) (2024 Kan. S. Ct. R. at 258) (attorney registration), and

- Supreme Court Rule 210 (2024 Kan. S. Ct. R. at 260) (duty to assist).

Upon conclusion of the hearing, the panel made findings of fact and conclusions of law and recommended Crow-Johnson be disbarred, as follows:

*"Findings of Fact*

. . . .

"DA13,872

"12. In 2003, J.C. obtained a Living Trust Agreement that created a charitable share and a family share of the trust and also a separate charitable remainder trust (collectively, 'the Trust' or 'J.C.'s Trust'). Relatives of J.C. were listed as beneficiaries of the family share of the Trust, including J.C.'s brother, R.C.

"13.     J.C. was a client of the law firm Coffman, DeFries, and No[]thern, P.A. For a period of time prior to mid-2019, Joshua A. Decker, an attorney with the Coffman firm, served as the Trustee of the Trust. Mr. Decker left the Coffman firm in mid-2019.

"14.     Effective June 21, 2019, J.C. executed a Removal and Replacement of Trustee that removed Mr. Decker as Trustee and appointed the respondent as trustee of the Trust. The respondent accepted this appointment. At that time, the respondent was an associate lawyer employed by the Coffman firm.

"15.     J.C. passed away on November 18, 2020. At this time, R.C. was over 90 years old and lived in California. Soon after J.C.'s passing, the respondent called R.C. to let him know a few things, including that the respondent had J.C.'s ashes in her possession. This was the only time that R.C. heard from the respondent.

"16.     Sometime before the end of 2020, the respondent left the Coffman firm and became employed at BOK Financial.

"17     Attorney S. Lucky DeFries, who was a partner of the former Coffman firm, testified that in January 2021, the Coffman firm merged with the Morris Laing law firm. He said that when the respondent left the Coffman firm, the respondent told the firm she planned to continue to serve as trustee of the J.C. Trust while employed at BOK Financial. The respondent also stated that she planned to continue preparing tax returns for the Topeka Bar Association, which is at issue in the DA13,964 matter and discussed further below. The Coffman firm ceased involvement in these matters after the respondent left, other than to assist others in locating documents and trying to contact the respondent.

"18.     After that initial phone call, R.C. tried to reach the respondent by phone and by email numerous times. R.C. did not have a copy of the Trust and was receiving phone calls from an insurance company about a policy for J.C. R.C. needed information from the respondent and was concerned that the respondent was not properly handling J.C.'s affairs. R.C. left messages for the respondent, but never received a response.

3

"19.     Eventually, in January 2022, R.C. hired Topeka lawyer Tom R. Barnes, II, to assist him in obtaining information from the respondent. Mr. Barnes contacted the respondent on January 18, 2022, and provided the respondent proof that he represented R.C., as requested by the respondent, on January 21, 2022. M[r]. Barnes tried to reach the respondent numerous times after that by phone and email but did not receive a response or any of the documents he had requested.

"20.     Mr. Barnes did as much investigation as he could into the Trust matter, including contacting the respondent's former firm, the Coffman firm, in early February 2020. Mr. Coffman sent Mr. Barnes copies of documents the firm had for J.C., including a copy of the Living Trust Agreement and the Removal and Replacement of Trustee appointing the respondent as trustee effective June 21, 2019. This was the first time that R.C. learned that he had been listed as 'trust advisor' in J.C.'s Trust. R.C. also learned he was listed as a beneficiary.

"21.     Because he received no response from the respondent despite numerous attempts to contact her, Mr. Barnes wrote a demand letter to the respondent asking for an inventory, accounting of all receipts and disbursements, and tax returns for the Trust. The letter also asked for copies of J.C.'s death certificate and the cremated remains of J.C. Mr. Barnes testified that R.C. was very frustrated with the respondent's lack of communication and wanted to resolve the matter quickly due to R.C.'s advanced age.

"22.     When the respondent did not respond to Mr. Barnes' demand letter, Mr. Barnes filed an action in Shawnee County District Court on March 7, 2022. The respondent was served with a copy of the petition on March 16, 2022.

"23.     A hearing was scheduled in the matter. The respondent failed to file an answer and failed to appear. On June 9, 2022, the court entered a partial default judgment against the respondent and ordered the respondent to provide a complete inventory and accounting of the property in the Trust within 14 days. The court noted that failure to comply with the order would be deemed an action in contempt of the court's order.

"24.     The respondent failed to comply with the court's June 9, 2022, order. On July 7, 2022, Mr. Barnes filed an Accusation in Contempt against the respondent on

4

R.C.'s behalf. Further, Mr. Barnes filed a motion for ex parte relief asking for appointment of a new trustee and other protections, which the court ultimately granted.

"25. Ms. Barnes testified that . . . after he filed the Accusation in Contempt, he personally went to the clerk's office to obtain a certified copy of the citation the court issued. The citation ordered the respondent to bring with her all records, files, and account documents the respondent had in her possession for the Trust to the contempt hearing.

"26. The respondent's employer, BOK Financial, was located on the way back to Mr. Barnes' office, so he stopped by BOK Financial and asked for the respondent. The respondent came to the lobby from her office and asked Mr. Barnes to walk with her back to her office to talk about the matter. Mr. Barnes personally served the respondent with the certified copy of the citation and told her that the matter was serious and that she needed to comply with orders of the court.

"27. On August 2, 2022, the respondent appeared at the hearing on the citation in contempt. The respondent informed the court and R.C. that she had scattered J.C.'s remains as J.C. had directed. Mr. Barnes testified during the formal hearing that R.C. did not take exception to the respondent having done this. Further, the respondent apologized for not doing a good job as a fiduciary, citing health issues of her parents, her husband, and herself making it difficult for her to keep up with all of her responsibilities.

"28. The respondent also told the court that she had some personal items belonging to J.C. and a box of records for the Trust that she was still trying to locate. Further, the respondent said she had filed tax returns for the Trust for the years 2020 and 2021, and that those returns were among the records she was trying to locate.

"29. The respondent agreed that she violated the court's order. The court expressed concern that the respondent still did not produce all of the information for the Trust she was ordered to provide. The court ordered that the respondent produce the remaining records within two weeks of the August 2, 2022, hearing. The hearing was continued to September 8, 2022.

5

"30.     On September 8, 2022, the parties again appeared for the continued hearing on the citation in contempt. Mr. Barnes advised the court that the respondent delivered to him an empty leather suitcase bearing J.C.'s initials and a banker's box that did not contain any of the requested documents, including the spreadsheets the respondent told the court at the prior hearing she had prepared to track J.C.'s assets. Further, copies of the Trust's 2020 and 2021 tax returns were not present with the documents provided.

"31.     The court placed the respondent under oath during the September 8, 2022, hearing. While testifying, the respondent admitted that she did not provide a copy of the trust to R.C. and did not respond to multiple requests for information from R.C. Further, in response to Mr. Barnes' question [about] whether she had prepared 2020 and 2021 income tax returns for the Trust, the respondent stated, 'Yes. Uh, but unfortunately I have not been able to locate those.' Again, later when asked, 'You personally prepared them?' the respondent stated, 'Yes, I did.'

"32.     Further, the respondent testified that although the court had previously ordered her to produce copies of the income tax returns, she had not been able to locate them and had not contacted the IRS or the State of Kansas to try to obtain copies. The respondent also testified that she did not produce an accounting and inventory of the trust assets and did not produce the spreadsheets as she was ordered to do.

"33.     The respondent testified during that hearing that her mother was diagnosed with Parkinson's disease, her parents moved in with her so that she and her husband could act as their caregivers, and in March 2022, her mother passed away. The respondent said that her father was not doing well as a result. Further, the respondent testified that her husband was recently diagnosed with a mental health condition. She said these circumstances made administering the Trust more than she was capable of dealing with.

"34.     The respondent said that her house was in disarray from her parents moving in with her and then subsequently moving into an assisted living facility. The respondent believed she had more records for the Trust at her home but had not been able

6

to locate them. The court ordered the respondent to turn over the records the respondent said were saved on her computer within one week.

"35.     During the hearing, the respondent agreed that she should be responsible for paying R.C.'s attorney fees in the case. The court ordered the respondent to pay R.C.'s attorney fees and expenses for bringing the action, totaling $9,981.54, as a sanction for past violation of the court's prior three orders. The court further informed the respondent that if the tax returns and computer records were not produced within a week as presently ordered, the court would order the respondent to spend one weekend in jail.

"36.     During a September 20, 2022, hearing, the respondent said she was unable to locate all of the records, including 2020 and 2021 income tax returns for the Trust, in order to purge the contempt finding. R.C. acknowledged that he received a check from the respondent paying the $9,981.54 attorney fee.

"37.     At the formal hearing, the disciplinary administrator's office agreed during closing argument that the respondent paid this sanction in full.

"38.     In its journal entry, the district court concluded:
'The Court expresses its disbelief that the Defendant as a former member of the bar, failed to segregate and preserve the files and documents of the trusts from other files and documents in her home; its aggravation with the Plaintiff being forced to go to the measures he has to obtain information regarding his late brother's Trusts; and its extreme disappointment with the Defendant's contemptuous behavior in response to the Court's directives leading up to a Citation in Contempt being issued, prosecuted and sanctions being imposed. The foregoing being noted, the Court recognizes that requiring the Defendant to serve time in jail is not likely to change the circumstances.'

The court ordered the respondent to continue to turn over any records for the Trust in her possession. However, the case eventually terminated.

"39.    Jason Walker, and later Mike Davies, with The Trust Company were appointed as the new trustees of the Trust. The Trust Company ultimately hired an accounting firm to assist with recreating an accounting for the Trust estate. The accounting firm obtained information from the IRS showing that income tax returns were not filed for the Trust in 2020 or 2021.

"40.    Mr. Davies testified that on October 16, 2023, The Trust Company received notice from the IRS about income taxes owed for the Trust. For the tax year ending December 31, 2021, the IRS stated that the Trust owed $21,982.00 in unpaid income taxes, plus interest in the amount of $2,592.26, a failure to file penalty of $4,945.95, and a failure to pay penalty of $2,088.29.

"41.    Mr. Davies testified that if the Trust had been administered properly, the $9,626.50 in interest and penalties would not have been owed and the income tax owed may have been lower. Mr. Davies explained that proper administration of a trust typically involves efforts to shift some of the tax burden away from the Trust and to the beneficiaries, because a trust typically pays taxes at a much higher rate than most individuals do.

"42.    Mr. Davies expects further penalties from the IRS for the tax year ending December 31, 2022, because those tax returns were also not filed on time. The Trust Company has asked the IRS for a waiver of the penalties because the fiduciary in charge of the account during those times—the respondent—is no longer the trustee of record. Mr. Davies testified that it is unlikely the IRS will grant the Trust a waiver on that basis.

"43.    Mr. Davies testified that The Trust Company received notice from the State of Kansas on October 10, 2023, that the Trust has a balance due for the tax year ending December 31, 2021, of $982.22.

"44.    Further unnecessary expenses the Trust incurred during the time the respondent was trustee were an AT&T bill and United Healthcare premiums that both continued to be charged after J.C.'s death, according to Mr. Davies. United Healthcare agreed to reimburse the Trust for the premiums paid after J.C.'s death, but AT&T did not waive the total overpaid amount of over $2,300.00. Moreover, the accounting firm hired

8

by The Trust Company to research and account for the Trust during the time the respondent was trustee charged more for these additional services; approximately $4,500.00. Mr. Davies testified that it had not yet been determined, but it was possible The Trust Company would need to charge an additional approximately $500.00 for the reconstructing and research it did to determine the assets of the Trust in order to establish a new basis for tax purposes.

"45.     Mr. Davies testified that Mr. Barnes' legal fees were another expense incurred by the trust as a result of the respondent's failure to perform her duties as trustee, but as noted above, the respondent paid that amount.

"46.     Mr. Davies also testified that he saw no evidence that the respondent had taken any funds from the Trust estate.

"DA13,872

"47.     The respondent, through her employment at the Coffman firm, had prepared the tax returns for the Topeka Bar Association ('TBA') for several years before the 2020 tax year. When Amanda Kohlman began as executive director of the TBA in March 2020, attorney S. Lucky DeFries with the Coffman firm told Ms. Kohlman about how his firm prepared the TBA tax returns and that the firm would file a standard filing extension and discuss what documents were needed from the TBA in August.

"48.     Ms. Kohlman testified she met with the respondent in August 2020 and the respondent told Ms. Kohlman what documents she needed to complete the tax return. Ms. Kohlman provided physical copies of everything to the respondent during that meeting, except for two documents that Ms. Kohlman emailed later. The respondent also asked Ms. Kohlman to provide a check for the filing fee so that the respondent could mail it to the IRS with the tax return. Ms. Kohlman provided this check to the respondent.

"49.     At the time, Ms. Kohlman knew that the Coffman firm was disbanding and that certain members planned to merge with the Morris Laing firm. The respondent assured Ms. Kohlman during a phone call that she was still going to prepare TBA's tax return for the 2020 tax year.

9

"50.    Later, the respondent told Ms. Kohlman that the respondent had filed the TBA's tax return by mail. Ms. Kohlman relied on the respondent's statement, in part, because the respondent had prepared and filed the TBA's tax returns for years.

"51.    The TBA later received a notice from the IRS that the TBA's tax filing for the 2020 year was delinquent. In a letter from the IRS dated October 11, 2021, the IRS informed the TBA that the IRS was charging a penalty of $220.00 for filing late.

"52.    The TBA sent multiple communications to the respondent to try to find out what happened with the tax filing and get information and documents from the respondent.

"53.    Ms. Kohlman last heard from the respondent that the respondent would continue to look into the issue and then never heard from the respondent after that. The respondent never returned the documents provided to her by the TBA, despite multiple requests from the TBA to have the documents returned so that the organization could file its 2020 return.

"54.    Janet Ward, an attorney with the Morris Laing firm, was hired by the TBA in 2022 to assist with the tax filing issue and to prepare its tax returns after the respondent stopped communicating with the TBA. Ms. Ward testified that she also tried to contact the respondent numerous times for information. Ms. Ward heard from the respondent that the respondent's mother had moved in with her and then later that her mother had passed away and that the respondent would try to find the TBA records. However, Ms. Ward never heard back from the respondent after this and was not able to get any information from the respondent to complete the TBA returns. Ultimately, Ms. Ward was not able to assist the TBA to complete the returns.

"55.    Tana Griffith took over as the executive director of the TBA after Ms. Kohlman left in February 2022. Ms. Griffith learned that TBA had an agreement with the Coffman firm for completing TBA's tax returns and that for the past several years the respondent had taken over completing and filing the returns for TBA. Prior TBA meeting minutes showed the respondent agreed to prepare the TBA tax returns. Ms. Griffith also

10

found documents from the respondent showing she had prepared prior tax returns for the TBA.

"56.    Ms. Griffith also learned that the TBA tax returns for the 2020 fiscal year had not been filed. The following years' tax return filing problems dominoed because the 2020 tax return had not been filed. Ms. Griffith tried to reach the respondent at all places of contact information she had for the respondent. The respondent did not respond.

"57.    The TBA received notices from the IRS showing a penalty of $220.00 on October 11, 2021, for filing late, a penalty of $5,769.65 on January 2, 2023, for filing late, and a penalty of $3,000.00 on February 6, 2023, for filing late.

"58.    Ultimately, the IRS granted a waiver of the TBA's late tax filing penalties in October 2023.

"Disciplinary Investigation and Notice to Respondent

"59.    Attorney Jon Blongewicz testified that he was assigned by the disciplinary administrator's office to investigate R.C.'s complaint against the respondent. Mr. Blongewicz tried to contact the respondent by email on August 26, 2022, by certified mail and regular mail on August 29, 2022, and by phone, leaving a voicemail, on October 7, 2022. The respondent never contacted Mr. Blongewicz in response to these communications.

"60.    William T. Schilling, special investigator with the disciplinary administrator's office, testified that he tried to reach the respondent by calling her home and work phone numbers the respondent provided to attorney registration. Further, Mr. Schilling sent an email to the respondent's email address and letters to the respondent's home and office addresses she provided to attorney registration. Mr. Schilling received no response from the respondent.

"61.    When Mr. Schilling called the respondent's work phone number at BOK Financial, the first time he selected the extension for the respondent. When he did not reach the respondent at that extension, Mr. Schilling called again and selected an

11

extension for another employee. The person who answered told Mr. Schilling that the respondent had unexpectedly resigned and that the person had heard the respondent moved to Lincoln, Nebraska with her husband.

"62.    Witness Jon Paul Washburn, treasurer for the TBA, also testified that he tried to contact the respondent by stopping by BOK Financial to speak with her in late 2022. Mr. Washburn was told that the respondent had left BOK Financial approximately two months prior, saying she retired and moved to Nebraska.

"63.    Mr. Schilling looked up the respondent's home address that the respondent had listed with attorney registration, which was in Tecumseh, Kansas, on the Internet. Mr. Schilling saw the residence in Tecumseh, Kansas was listed for sale on realtor websites in January 2023.

"64.    Mr. Schilling then tried to find another address for the respondent. Mr. Schilling found a street address and a PO Box address listed for the respondent in Lincoln, Nebraska.

"65.    Mr. Schilling sent letters to the respondent asking her to contact him about this disciplinary matter to the respondent's registered Topeka area address, the street address in Lincoln, and the PO Box address in Lincoln. The Topeka letter was returned as undeliverable. Mr. Schilling never heard from the respondent in response to any of the mailings.

"66.    Mr. Schilling also tried to search for the best phone number to reach the respondent. Mr. Schilling left a voicemail for the respondent at a new number found for the respondent asking her to return his call but did not receive a call back.

"67.    Katie McAfee, assistant disciplinary administrator, made similar attempts to reach the respondent with no success.

"68.    Mitzi Dodds, administrative secretary for the disciplinary administrator's office, testified that she prepared mailings to the respondent notifying the respondent of various actions and hearing dates that have occurred in this disciplinary matter. When

12

Ms. Dodds sent a communication to the respondent, she regularly reviewed the Disciplinary Administrator's Database, which she testified is updated daily with the most up-to-date Kansas attorney information from attorney registration at the Office of Judicial Administration.

"69.     Ms. Dodds testified that she reviewed the database the morning of the formal hearing and the respondent's information had not changed from the information shown in disciplinary administrator's exhibit 1.

"70.     Ms. Dodds testified that numerous filings and notices in this matter were mailed to the home and office addresses listed with attorney registration for the respondent and also to the addresses in Lincoln, Nebraska that Mr. Schilling had found for the respondent. Ms. Dodds noted that two of those Nebraska mailings as shown in Exhibits 16 and 17 were signed for by the respondent's husband. Further, a third mailing, which was a copy of the Notice of Deposition of R.C. in this matter, was signed for by the respondent at the same Nebraska street address.

"71.     Ms. Dodds testified that a copy of the formal complaint and notice of hearing stating that the formal hearing was scheduled for October 24, 2023, were sent to the respondent at her email address and mailed to the BOK Financial office address the respondent provided to attorney registration at the time they were filed on August 22, 2023. Further, Ms. Dodds mailed copies of the formal complaint and notice of hearing to the PO Box address and the street address in Lincoln, Nebraska found for the respondent when these documents were filed.

"72.     Later, in October 2023, Mr. Schilling found that the respondent had a vehicle registered at a different street address in Lincoln, Nebraska and records showed her husband resided at that new Lincoln, Nebraska street address as well.

"73.     The disciplinary administrator's office received no response from the respondent to any of the communications sent to her.

13

"Service

"74.    The respondent failed to appear at the hearing on the formal complaint. It is appropriate to proceed to hearing when a respondent fails to appear only if proper service was obtained. Kansas Supreme Court Rule 215 governs service of process in disciplinary proceedings. Rule 215 (2023 Kan. S. Ct. R. at 267). Rule 215 requires the disciplinary administrator to serve the respondent with a copy of the formal complaint and notice of hearing no later than 45 days before the hearing on the formal complaint. Rule 215(a)(2). Service on the respondent must be made by either personal service, certified mail to the respondent's most recent registration address with the Office of Judicial Administration, or on the respondent's counsel by personal service, first-class mail, or email. Rule 215(a)(3).

"75.    In this case, the disciplinary administrator complied with Rule 215 by sending a copy of the formal complaint and the notice of hearing and prehearing conference by certified mail, return receipt requested, to the respondent's registered office address at BOK Financial in Topeka, Kansas, which the respondent provided as part of her attorney registration to the Office of Judicial Administration. This certified mailing was sent on August 22, 2023, which was more than 45 days prior to the formal hearing. This mailing was sufficient to establish service as required under Rule 215.

"76.    Additionally, the disciplinary administrator's office made numerous other attempts to contact the respondent via phone, email, and regular and certified mail at new addresses found for the respondent in Lincoln, Nebraska as described in the Findings of Fact section above.

"77.    The hearing panel concludes that the respondent was afforded notice of this disciplinary proceeding.

"78.    The hearing panel notes that the disciplinary administrator's office declined to move forward on its allegation that the respondent violated KRPC 1.1

14

because Ms. Voth stated the respondent's conduct fit more closely with a violation of other rules asserted. The hearing panel agrees and does not conclude that the respondent violated KRPC 1.1.

"79.     Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.3 (diligence), 1.4 (communication), 1.15 (safekeeping property), 1.16 (withdrawing from or terminating representation), 3.3 (candor toward the tribunal), 3.4 (disobey an obligation of the tribunal), 8.1(b) (disciplinary matters), 8.4(d) (misconduct prejudicial to the administration of justice), Supreme Court Rule 206(o) (attorney registration), and Supreme Court Rule 210 (duty to assist), as detailed below.

## "KRPC 1.3

"80.     Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3.

"81.     The respondent failed to diligently and promptly represent J.C. by failing to perform her fiduciary duties as trustee as she agreed to do as J.C.'s lawyer. The respondent's representation of J.C. while she worked for the Coffman firm included her performance of the duties as trustee of J.C.'s Trust. When the respondent left the Coffman firm to work for BOK Financial, she told the firm that she would continue to serve as the trustee of J.C.'s Trust.

"82.     However, the evidence clearly shows that the respondent abandoned her duties as trustee. The respondent failed to handle, track, or account for assets held under the Trust, failed to cancel bills being improperly charged to the Trust estate after J.C.'s death, such as the United Healthcare premiums and AT&T billings, and failed to keep R.C. and other beneficiaries of the Trust properly informed after J.C.'s death. Most concerning, the respondent failed to provide documentation and property of the Trust to R.C. or the subsequent trustee, despite being ordered by the Shawnee County District Court to do so.

15

"83. While testifying under oath on September 8, 2022, the respondent admitted that she did not provide a copy of the trust to R.C. and did not respond to multiple requests for information from R.C.

"84. The respondent's lack of diligence with regard to J.C.'s Trust required R.C. to file a lawsuit against her in order to obtain information about the Trust. The respondent was ultimately held in contempt for her failure to provide Trust documents and other property in her possession. Further, the respondent's conduct caused the Trust to have to pay increased taxes, tax penalties, and other additional costs to research and recreate documentation that the respondent should have completed.

"85. The respondent failed to diligently and promptly represent the TBA by failing to prepare and file the TBA's tax returns for the fiscal year ending in 2020. Despite having been provided all documents the respondent requested from TBA executive director, Amanda Kohlman, the respondent never filed the return and did not inform the TBA that she had not filed the return. In fact, the respondent told the TBA she did file the return, which was false.

"86. The respondent's lack of diligence in representing the TBA resulted in the TBA having to spend hours researching the issue, locating documentation, and resolving the tax filing issue. The TBA was charged $8,989.65 in IRA late filing penalties, which were later fortunately waived by the IRS.

"87. Because the respondent failed to act with reasonable diligence and promptness in representing J.C. and the TBA, the hearing panel concludes that the respondent violated KRPC 1.3 in both DA13,872 and DA13,964.

"KRPC 1.4

"88. KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.'

16

"89.    In this case, the respondent violated KRPC 1.4(a) when she failed to respond to requests from the TBA for information regarding the status of the TBA's 2020 tax return, which the respondent had agreed to prepare and file with the IRS. The TBA made multiple attempts through Ms. Kohlman, Ms. Griffith, Mr. Washburn, Ms. Ward, and others to reach the respondent to learn the status of its tax return filing and obtain documents that the TBA had provided to the respondent. The respondent's failure to communicate with the TBA caused unnecessary and significant problems for the organization, including IRS late filing tax penalties.

"90.    Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a) in DA13,964.

"KRPC 1.15

"91.    Lawyers must properly safeguard their clients' property. KRPC 1.15(a) specifically provides, in part, that:

'(a)    A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded.'

"92.    In this case, the respondent failed to properly safeguard J.C.'s Trust estate property. The respondent acknowledged before the Shawnee County District Court that she did not properly safeguard J.C.'s property and that his property and documentation for the Trust became commingled with her personal property at her residence. When R.C. and the subsequent trustee needed access to the property and records, the respondent was unable to produce them, despite being ordered by the court and held in contempt for her failure to do so. Eventually, some of the Trust property was turned over to the new trustee, but it was not done promptly.

"93.    Accordingly, the Trust property was not appropriately safeguarded or held separate from the respondent's own property. The hearing panel concludes that the

17

respondent failed to properly safeguard J.C.'s Trust estate property, in violation of KRPC 1.15(a) in DA13,872.

"KRPC 1.15(b)

"94.    Lawyers must deal properly with the property of their clients. Specifically, KRPC 1.15(b) provides:

'(b)    Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.'

"95.    The respondent violated KRPC 1.15(b) when she failed to promptly deliver to the TBA the documents the TBA had provided the respondent to prepare its 2020 tax return. Despite numerous requests through individuals associated with the TBA for the respondent to return the documents, the respondent did not do so.

"96.    Accordingly, the hearing panel concludes that the respondent violated KRPC 1.15(b) in DA13,964.

"KRPC 1.16(d)

"97.    KRPC 1.16 requires lawyers to take certain steps to protect clients after the representation has been terminated. Specifically, KRPC 1.16(d) provides the requirement in this regard:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled

18

and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

"98.     The respondent violated KRPC 1.16(d) in both DA13,872 and DA13,964 when she failed to notify either J.C. or the TBA that she would be unable to perform the duties she had originally agreed to do and failed to surrender property and documents to which the subsequent trustee and beneficiaries of the Trust and the TBA were entitled.

"99.     Accordingly, the hearing panel concludes that the respondent violated KRPC 1.16(d) in DA13,872 and DA13,964.

"KRPC 3.3

"100.     'A lawyer shall not knowingly:

'(1)     make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer; [or]

. . . .

'(3)     offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.'

19

"101.   In the DA13,872 case, the respondent made a false statement of fact to the Shawnee Count[y] District Court, Judge Mary Christopher, when the respondent told the court on August 2, 2022, that she had filed tax returns for J.C.'s Trust for the years 2020 and 2021, and that she had copies of the returns she had prepared and filed that she was unable to locate.

"102.   Further, on September 8, 2022, the respondent offered evidence she knew to be false and made a statement to the tribunal that she knew was false when the respondent testified under oath that she had personally prepared the 2020 and 2021 tax returns for the Trust.

"103.   The subsequent trustee assigned to the Trust, The Trust Company, learned later that 2020 and 2021 tax returns for the Trust were never filed with the IRS as the respondent had represented to the court. In fact, the IRS assessed late filing penalties and interest against the Trust for the failure to file the 2020 and 2021 tax returns.

"104.   The hearing panel concludes that by making a false statement to the court, including testifying falsely, the respondent knowingly made false statements of fact to the court in violation of KRPC 3.3(a).

"KRPC 3.4(c)

"105.   Lawyers must comply with court orders. Specifically, KRPC 3.4(c) provides: '[a] lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.'

"106.   In this case, in the DA 13,872 matter, Judge Christopher entered three separate orders between June and October, 2022, ordering the respondent to produce documents and property belonging to the Trust in the respondent's possession. The respondent ultimately produced a few items very late, but did not produce all of the items, stating she was unable to locate them in her home.

20

"107.    The respondent agreed that she violated the court's order.

"108.    The court held the respondent in contempt for her failure to comply with the court's orders and ordered the respondent to pay R.C. $9,981.54, as a sanction for the respondent's violation of the court's first three orders.

"109.    Judge Christopher even contemplated placing the respondent in jail for two days in order to obtain the respondent's compliance with the court's orders. However, later, Judge Christopher ultimately determined that sending the respondent to jail would not result in the respondent's compliance with the court's orders.

"110.    The hearing panel concludes that the respondent's failure to comply with Judge Christopher's orders violated KRPC 3.4(c).

"KRPC 8.1(b) and Rule 210(b)

"111.    Lawyers must cooperate in disciplinary investigations. KRPC 8.1(b) provides that 'a lawyer in connection with a . . . disciplinary matter, shall not: . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority . . . .'

"112.    Further, Supreme Court Rule 210(b) provides that, '[a]n attorney must timely respond to a request from the disciplinary administrator for information during an investigation and prosecution of an initial complaint or a report, a docketed complaint, and a formal complaint.'

"113.    Volunteer attorney investigator Jon Blongewicz, special investigator W. Timothy Schilling, and assistant disciplinary administrator Katie McAfee collectively made numerous attempts to reach the respondent and made numerous requests for information from the respondent in the DA13,872 and DA13,964 matters. The respondent was requested to provide a written response to the initial complaints in both matters and failed to do so in either case.

"114.    While some of the mailings to the respondent during the investigation were returned as undeliverable, some sent to the Lincoln, Nebraska address[es] were not, indicating that the respondent received them and knew she needed to respond. In fact, later mailings in the disciplinary case were signed for by the respondent and her husband, showing that they indeed received mail at that address.

"115.    Because the respondent knowingly failed to provide a written response to the initial complaints filed in DA13,872 and DA13,964, the hearing panel concludes that the respondent violated KRPC 8.1(b) and Supreme Court Rule 210(b).

"KRPC 8.4(d)

"116.    'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d).

"117.    The respondent engaged in conduct that was prejudicial to the administration of justice when she obtained documents she said she needed from the TBA to prepare and file the TBA's 2020 tax return, did not prepare and file the 2020 return, and later lied to Ms. Kohlman by stating she had filed the tax return when she had not.

"118.    As a result of the respondent's misconduct, the IRS imposed late filing penalties on the TBA that would not have been imposed but for the respondent's failure to prepare and file the returns as she had agreed to do.

"119.    Further, individuals employed by and associated with the TBA had to put a significant amount of work into trying to obtain its original records from the respondent, after the respondent did not return the organization's original financial records to the TBA, and other efforts to try to resolve the 2020 tax filing issue. The respondent's conduct was prejudicial to the administration of justice.

"120.    As such, the hearing panel concludes that the respondent violated KRPC 8.4(d).

22

"Rule 206(o)

"121.    'No later than 30 days after a change occurs, an attorney must use the attorney registration portal to update any of the required information in subsection (n).' Rule 206(o). The required information in subsection (n) includes an attorney's residential address, business address, email address, business telephone number, and personal telephone number.

"122.    `The disciplinary administrator's office learned through its investigation, as Mr. Schilling testified, that the respondent's home address was listed for sale on realtor websites in January 2023. Further, Mr. Schilling located new residential addresses for the respondent in Lincoln, Nebraska, and mailings from the disciplinary administrator's office sent to the respondent at the Lincoln address were signed for by the respondent and her husband.

"123.    However, Ms. Dodds testified that as of the morning of the formal hearing, she had checked the attorney registration database information and the respondent's residential address had not been changed with attorney registration from the Topeka area address of the house that was listed for sale in January 2023.

"124.    Further, Mr. Schilling learned through his investigation that the respondent had unexpectedly resigned from her employment at BOK Financial and moved to Nebraska with her husband. Mr. Washburn, treasurer for the TBA, also testified that he tried to contact the respondent by stopping by BOK Financial to speak with her in late 2022. Mr. Washburn was told that the respondent had left BOK Financial approximately two months prior, saying she retired and moved to Nebraska.

"125.    Ms. Dodds testified that as of the morning of the formal hearing, she had checked the attorney registration database information and the respondent was still listed as employed at BOK Financial.

"126.    The evidence showed that phone calls to the respondent's registered residential and business phone numbers were unanswered and unreturned. Also, mailings

23

sent to the respondent's registered residential and business address were returned to the disciplinary administrator's office as undeliverable and went without response.

"127.	The respondent's failure to update her contact information with attorney registration caused significant wasted time and resources during the investigation of the complaints in DA13,872 and DA13,964

"128.	Accordingly, the hearing panel concludes the respondent violated Supreme Court Rule 206(o).

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"129.	In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"130.	*Duty Violated*. The respondent violated her duty to her clients, to the legal system, and to the legal profession.

"131.	*Mental State*. The respondent knowingly and intentionally violated her duties.

"132.	*Injury*. As a result of the respondent's misconduct, the respondent caused injury to her clients in the form of unnecessary stress, wasted time and resources, deprivation of property and documents to which the clients were entitled, and unnecessary tax penalties and additional financial costs. The respondent caused injury to the legal profession by failing to follow court orders, ultimately being held in contempt, and by making false statements to the tribunal, which interfered with the administration of justice. Finally, the respondent violated her duty to the legal profession to cooperate in the disciplinary investigations, which unnecessarily wasted time and resources.

24

"133.    Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"134.    *Dishonest or Selfish Motive*.  The respondent lied under oath, to the Shawnee County District Court, and lied to the TBA about her preparation and filing of tax returns. Accordingly, the hearing panel concludes that the respondent's misconduct was motivated by dishonesty. The hearing panel did not find a selfish motive.

"135.    *A Pattern of Misconduct*.  The respondent engaged in a pattern of misconduct in both DA13,872 and DA13,964 by consistently and continuously failing to provide documents and information to the subsequent trustee and beneficiaries of the Trust and to the TBA, making false statements to the court and to individuals who asked about the status of the tax returns the respondent claimed to have prepared and filed, and failing to respond[] to reasonable requests for information. This pattern was consistent throughout and between both cases at all stages.

"136.    *Multiple Offenses*.  The respondent committed multiple rule violations. The respondent violated KRPC 1.3 (diligence), 1.4 (communication), 1.15 (safekeeping property), 1.16 (withdrawing from or terminating representation), 3.3 (candor toward the tribunal), 3.4 (disobey an obligation of the tribunal), 8.1(b) (disciplinary matters), 8.4(d) (misconduct prejudicial to the administration of justice), Supreme Court Rule 206(o) (attorney registration), and Supreme Court Rule 210 (duty to assist) between two separate docketed matters. Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"137.    *Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process*.  The respondent failed to provide written responses to the complaints in both cases after she was repeatedly instructed to do so. Further, the respondent failed to provide updated contact information to attorney registration for the disciplinary administrator's office to reach her

about this case. The respondent's repeated failure to provide written responses to the complaint amounts to bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules and orders of the disciplinary process.

"138. *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas on September 20, 1990. At the time of the misconduct, the respondent had been practicing law for more than 30 years.

"139. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"140. *Absence of a Prior Disciplinary Record*. The respondent has not previously been disciplined. This is a mitigating factor.

"141. *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct*. There was some evidence that the respondent may have been dealing with personal problems. The transcript of hearings before the Shawnee County District Court show the respondent told the court she was serving as a caretaker for her parents who had moved into her home, her mother was ill and later passed, and the respondent and/or her husband may have also been dealing with health issues. However, without the respondent's appearance at the formal hearing to assert that these issues indeed occurred and contributed to her misconduct, the hearing panel cannot conclude that there is sufficient evidence this is a mitigating factor.

"142. *Imposition of Other Penalties or Sanctions*. The respondent was sanctioned by the Shawnee County District Court and ordered to pay R.C. $9,981.54 in attorney fees and costs for bringing the action to obtain Trust records from the respondent. Therefore, the hearing panel concludes the respondent has experienced other sanctions for her misconduct. The disciplinary administrator's office agreed that the respondent paid this sanction in full.

26

"143.    In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.41    Disbarment is generally appropriate when:

'(a)    a lawyer abandons the practice and causes serious or potentially serious injury to a client; or

'(b)    a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

'(c)    a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.'

'6.11    Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.'

'6.21    Disbarment is generally appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another and causes serious injury or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding.'

'7.1    Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another and causes serious or potentially serious injury to a client, the public, or the legal system.'

27

'7.2    Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.'

"*Recommendation of the Parties*

"144.    The disciplinary administrator recommended that the respondent be disbarred.

"145.    The respondent was not present to present a recommendation.

"*Recommendation of the Hearing Panel*

"146.    Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be disbarred.

"147.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

DISCUSSION

In an attorney discipline proceeding, we consider the evidence, the disciplinary panel's findings, and the parties' arguments and determine whether KRPC violations exist and, if they do, the appropriate discipline. Attorney misconduct must be established by clear and convincing evidence. *In re Spiegel*, 315 Kan. 143, 147, 504 P.3d 1057 (2022); see Supreme Court Rule 226(a)(1)(A) (2024 Kan. S. Ct. R. at 279). Evidence is clear and convincing if it "causes the factfinder to believe that 'the truth of the facts asserted is highly probable.'" 315 Kan. at 147.

28

Here, we find that clear and convincing evidence supports the hearing panel's findings and conclusions about Crow-Johnson's misconduct. In addition to the evidence presented at the hearing, we consider Crow-Johnson's admission to the panel's findings and conclusions. That admission results by operation of Supreme Court Rule 228(g)(1) (2024 Kan. S. Ct. R. at 285), which provides that "if the respondent fails to timely file an exception, the findings of fact and conclusions of law in the final hearing report will be deemed admitted by the respondent."

Based on these admissions and our review of the evidence in the record, we find that Crow-Johnson violated:

- KRPC 1.3 (2024 Kan. S. Ct. R. at 328) (diligence),
- KRPC 1.4(a) (2024 Kan. S. Ct. R. at 329) (communication),
- KRPC 1.15(a) (2024 Kan. S. Ct. R. at 369) (safekeeping property),
- KRPC 1.16 (2024 Kan. S. Ct. R. at 374) (declining from or terminating representation),
- KRPC 3.3 (2024 Kan. S. Ct. R. at 387) (candor),
- KRPC 3.4(c) (2024 Kan. S. Ct. R. at 391) (disobeying an obligation of the tribunal),
- KRPC 8.1(b) (2024 Kan. S. Ct. R. at 427) (disciplinary matters),
- KRPC 8.4(d) (2024 Kan. S. Ct. R. at 430) (misconduct prejudicial to the administration of justice),
- Supreme Court Rule 206(o) (2024 Kan. S. Ct. R. at 258) (attorney registration), and
- Supreme Court Rule 210 (2024 Kan. S. Ct. R. at 260) (duty to assist).

The only remaining issue is determining the appropriate discipline for Crow-Johnson's violations. At the panel hearing, the Deputy Disciplinary Administrator

29

recommended disbarment, and the hearing panel unanimously agreed respondent should be disbarred. The hearing panel's recommendations are advisory only and do not prevent us from imposing greater or lesser sanctions. Supreme Court Rule 226(a)(1)(D) (2024 Kan. S. Ct. R. at 279); *In re Long*, 315 Kan. 842, 853, 511 P.3d 952 (2022). At oral argument, the Chief Deputy Disciplinary Administrator again recommended disbarment.

Here, our consideration of the appropriate discipline begins with the panel's and the Disciplinary Administrator's recommendation of disbarment. But we also take into consideration Crow-Johnson's failure to appear at oral argument despite the requirement in Supreme Court Rule 228(i) (2024 Kan. S. Ct. R. at 286) that both the Disciplinary Administrator and the respondent attend the hearing. The Clerk of the Kansas Appellate Courts filed an affidavit establishing that Crow-Johnson had notice of the hearing, so we consider this violation along with the others found by the hearing panel.

Considering Crow-Johnson's violation of Rule 228(i) and the findings, conclusions, recommendations, and the American Bar Association Standards for Imposing Lawyer Sanctions, we conclude the severe sanction of disbarment is warranted.

DISCIPLINE

IT IS THEREFORE ORDERED that June R. Crow-Johnson is hereby disbarred from the practice of law in the state of Kansas, effective on the filing of this opinion, in accordance with Supreme Court Rule 225(a)(1) (2024 Kan. S. Ct. R. at 278).

IT IS FURTHER ORDERED that the Office of Judicial Administration strike the name of June R. Crow-Johnson from the roll of attorneys licensed to practice law in Kansas.

IT IS FURTHER ORDERED that Crow-Johnson comply with Supreme Court Rule 231 (2024 Kan. S. Ct. R. at 289).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed under Supreme Court Rule 229 (2024 Kan. S. Ct. R. at 287) to Crow-Johnson and that this opinion be published in the official Kansas Reports.